O’Donnell, J.
{¶ 1} The issue in this case is whether the trial court violated Darius Clark’s constitutional right to confront the witnesses against him when it admitted a hearsay statement that three-and-a-half-year-old L.P. made to his preschool teacher, Debra Jones, in response to questions asked about injuries to his eye and marks on his face observed upon his arrival at a preschool day care.
{¶ 2} In Davis v. Washington, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), the court enunciated the primary-purpose test to determine whether a *347 statement made to a law-enforcement officer or an agent of law enforcement in the course of an investigation is testimonial or nontestimonial.
{¶ 3} We adopted that test in State v. Siler, holding:
“Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation' is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.”
116 Ohio St.3d 39, 2007-Ohio-5637, 876 N.E.2d 534, paragraph one of the syllabus, quoting Davis at 822.
{¶ 4} At the time Jones questioned L.P., she acted as an agent of the state for purposes of law enforcement because at a minimum, teachers act in at least a dual capacity, fulfilling their obligations both as instructors and also as state agents to report suspected child abuse pursuant to R.C. 2151.421, which exposes them to liability if they fail to fulfill this mandatory duty. Because the circumstances objectively indicate that no ongoing emergency existed and that the primary purpose of the questioning was to establish or prove past events potentially relevant to a later prosecution, the statement L.P. made to his preschool teacher is testimonial in nature, and its admission into evidence violated Clark’s right to confront witnesses under the Sixth Amendment to the United States Constitution.
{¶ 5} Accordingly, we affirm the judgment of the court of appeals.
Factual and Procedural History
{¶ 6} Darius Clark lived with his girlfriend, T.T., her three-year-old son, L.P., and her two-year-old daughter, A.T. On March 17, 2010, Clark dropped off L.P. at the William Patrick Day Head Start Center in Cleveland. While in the center’s lunchroom, one of L.P.’s preschool teachers, Ramona Whitley, observed that L.P.’s left eye appeared bloodshot and bloodstained. She asked him, “What happened?” and L.P. at first said nothing but then replied, “I fell.” Whitley asked, “How did you fall and hurt your face?” and L.P. answered, “I fell down.”
{¶ 7} On arriving in the brighter light of the classroom, Whitley looked again at L.P. and saw “[r]ed marks, like whips of some sort” on L.P.’s face. Whitley, “in shock,” got the attention of the class’s lead teacher, Debra Jones.
*348 {¶ 8} When Jones saw L.P.’s eye, she said, “He needs to go to Ms. Cooper, my supervisor. After I looked at him, I said, you know, Pm going to take him to Ms. Cooper.” Jones then asked, “Who did this? What happened to you?” L.P. “seemed kind of bewildered. He said something like Dee, Dee.” Jones described L.P. as “Out. Staring out. And I was asking him — he almost looked uncertain, but he said, Dee.” Because L.P. had only attended the school for a short time, Jones could not be certain that the child understood her questions. Jones escorted L.P. to the school office. She testified that when the supervisor, Cooper, observed L.P.’s injuries, she said, “Whoever seen [sic] him first got to make the call.” As a result, Whitley called 696-KIDS and made a report of suspected child abuse.
{¶ 9} In response, the Cuyahoga County Department of Child and Family Services (“CCDCFS”) sent a social worker to the school to question L.P. Clark arrived at the school while the social worker was questioning L.P. and denied responsibility for L.P.’s injuries. Clark then left with the child.
(¶ 10} The next day, a social worker located T.T.’s children at the home of Clark’s mother and took them to the hospital. A physician determined that L.P. had bruising in various stages of development and abrasions consistent with having been struck by a linear object and that A.T. had bruising, burn marks, a swollen hand, and a pattern of sores at her hairline. The physician suspected child abuse and estimated that the injuries occurred between February 28 and March 18, 2010.
{¶ 11} A grand jury indicted Clark on one count of felonious assault relating to L.P., four counts of felonious assault relating to A.T., two counts of endangering children, and two counts of domestic violence. The trial court declared L.P. incompetent to testify but denied Clark’s motion in limine to exclude L.P.’s out-of-court identification statements. Seven witnesses testified regarding the statements made by L.P.: Jody Remington, a Cleveland police detective; Sarah Bolog, a CCDCFS social worker; Howard Little, a CCDCFS intake social worker; Whitley and Jones; the children’s maternal grandmother; and the children’s maternal great-aunt. Unexplained in this record, and highlighted by the court of appeals in its opinion, is that the trial court declared L.P. incompetent to testify at the time of trial, yet it permitted testimony about statements this incompetent three-and-a-half-year-old child made to his teachers six months earlier. The jury found Clark guilty of all charges, except for one count relating to A.T., and the court thereafter sentenced Clark to an aggregate 28-year prison term.
{¶ 12} Clark appealed, claiming that the trial court violated his right to confrontation by allowing witnesses to testify about the statements L.P. made to his preschool teachers. The court of appeals held that the trial court abused its *349 discretion when it permitted Detective Remington, Bolog and Little (the social workers), and Whitley and Jones (the preschool teachers) to testify regarding L.P.’s statements, because they were testimonial and their admission violated the Confrontation Clause. State v. Clark, 8th Dist. Cuyahoga No. 96207, 2011-Ohio-6623, 2011 WL 6780456, at ¶ 19, 26, 31, and 35. The appellate court reversed Clark’s convictions and remanded the matter for a new trial. Id. at ¶ 72. We accepted the state’s appeal challenging only the exclusion of testimony from Whitley and Jones and asserting that it did not violate the Confrontation Clause; the state did not appeal the decision of the appellate court that testimony from Detective Remington and from social workers Bolog and Little violated the Confrontation Clause and was therefore inadmissible.
Law and Analysis

Teachers as Agents of Law Enforcement

{¶ 13} Ohio law imposes a duty on all school officers and employees, including administrators and employees of child day-care centers, to report actual or suspected child abuse or neglect. R.C. 2151.421, the source of that duty, provides:
(A)(1)(a) No person described in division (A)(1)(b) of this section who is acting in an official or professional capacity and knows, or has reasonable cause to suspect based on facts that would cause a reasonable person in a similar position to suspect, that a child under eighteen years of age * * * has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child shall fail to immediately report that knowledge or reasonable cause to suspect to the entity or persons specified in this division. Except as provided in section 5120.173 of the Revised Code, the person making the report shall make it to the public children services agency or a municipal or county peace officer in the county in which the child resides or in which the abuse or neglect is occurring or has occurred.
(b) Division (A)(1)(a) of this section applies to any person who is an * * * administrator or employee of a child day-care center; * * * administrator or employee of a certified child care agency or other public or private children services agency; school teacher; school employee; school authority * * *.
{¶ 14} In Yates v. Mansfield Bd. of Edn., 102 Ohio St.3d 205, 2004-Ohio-2491, 808 N.E.2d 861, ¶ 30, we noted that R.C. 2151.421 imposes mandatory reporting *350 duties on teachers and others listed in the statute because they are among the “most likely and qualified persons to encounter and identify abused and neglected children” and have “the necessary training or skill to detect the symptoms of child abuse.” As the court further explained:
[w]hile * * * the primary purpose of reporting is to facilitate the protection of abused and neglected children rather than to punish those who maltreat them, it is clear that the General Assembly considered identification and/or prosecution of the perpetrator to be a necessary and appropriate adjunct in providing such protection, especially in the institutional setting. Thus, R.C. 2151.421(F)(1) and (2) provide that children services agencies shall investigate each report of known or suspected child abuse in cooperation with law enforcement to determine, among other things, “the cause of the injuries * * * and the person or persons responsible” and “make any recommendations to the county prosecuting attorney or city director of law that it considers necessary to protect any children that are brought to its attention.”
(Emphasis added in part.) Id. at ¶ 25.
{¶ 15} Thus, prosecution for criminal acts of child abuse is expressly contemplated by the reporting statute as a means of protecting children. And in order to effectuate that purpose, R.C. 2151.421(C) requires the person reporting the abuse to provide a written report if one is requested by the receiving agency. Further, a failure to report suspected child abuse is a criminal offense pursuant to R.C. 2151.99(C), and R.C. 2151.421(M) makes a mandated reporter “liable for compensatory and exemplary damages to the child who would have been the subject of the report that was not made.”
{¶ 16} Although a teacher’s questioning of a child about suspected injury is consistent with a duty to report potential abuse and arises from a concern to protect a child, the United States Supreme Court’s Confrontation Clause analysis requires that we ascertain the “primary purpose” for the questioning. Here, the circumstances objectively indicate that the primary purpose of the questions asked of L.P. was not to deal with an existing emergency but rather to gather evidence potentially relevant to a subsequent criminal prosecution. His teachers reacted to manifest signs of child abuse and complied with their statutory and professional duties to report it to child-protection authorities. They did not seem to believe his story that he had fallen and instead focused on who caused the injuries. Notably, Jones’s first question on seeing L.P. was “Who did this?” And his teachers did not treat the situation as involving any ongoing medical emergency. L.P. did not complain of his injuries, he did not have any need for *351 urgent medical care, and his teachers did not render any medical treatment. Immediately after L.P. responded, Whitley called 696-KIDS and made a report, and shortly thereafter, a social worker, Little, arrived at the school to further investigate the allegation of abuse; within two days, both teachers gave formal statements to police.
{¶ 17} The purpose of a teacher’s duty to report suspicions of child abuse is to protect children, and information reported to teachers can be used by child-protection agencies to separate the child from a dangerous situation as the investigation unfolds. It can lead to counseling for the family or even the permanent removal of the child from the parents’ custody. Here, the information also led to criminal prosecution, and therefore the use of the child’s statements implicates the defendant’s constitutional rights. When teachers suspect and investigate child abuse with a primary purpose of identifying the perpetrator, any statements obtained are testimonial for purposes of the Confrontation Clause.

Admission of Out-of-Court Statements

{¶ 18} The Sixth Amendment to the United States Constitution provides: “In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * *
{¶ 19} In Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the court recognized that the interpretation of the Sixth Amendment articulated in Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), could not be reconciled with the historical underpinnings of the Confrontation Clause. It held that the Sixth Amendment “commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination.” Crawford at 61. Because the Sixth Amendihent guarantees the accused’s right to confront those who “bear testimony,” id. at 51, the Confrontation Clause bars admission of testimonial statements unless the witness appears at trial or, if the witness is unavailable, the accused had a prior opportunity for cross-examination. Id. at 59. The court explained that “[whatever else the term [‘testimonial’] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.” Id. at 68.
{¶ 20} Two years later, the court revisited the issue in the consolidated cases of Davis v. Washington and Hammon v. Indiana, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). Both cases involved statements by domestic-violence victims who did not testify at trial: in Davis, the victim made statements to a 9-1-1 operator identifying her assailant and describing his whereabouts immediately after an assault, whereas in Hammon, the victim made statements to police *352 officers responding to a domestic-violence complaint after they had secured the scene. In those cases, the court distinguished police interrogations that relate to an ongoing emergency from those that relate to past criminal conduct. In considering whether the statements made in the context of those two different situations were testimonial, the court formulated the primary-purpose test: “Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.” Id. at 822.
{¶ 21} Applying the primary-purpose test in Davis, the court determined that the objective circumstances surrounding the victim’s interrogation indicated that “its primary purpose was to enable police assistance to meet an ongoing emergency.” Id. at 828. The court reasoned that “the nature of what was asked and answered [during the 9-1-1 call], again, viewed objectively, was such that the elicited statements were necessary to be able to resolve the present emergency, rather than simply to learn * * * what had happened in the past.” (Emphasis sic.) Id. at 827. In addition, the victim’s call “was plainly a call for help against bona fide physical threat” and involved “frantic answers” given “in an environment that was not tranquil, or even * * * safe.” Id. Accordingly, the court held that the statements were nontestimonial, and therefore were admissible. Id. at 828.
{¶ 22} Application of the primary-purpose test in Hammon produced a contrary result: the court concluded that the statements were testimonial and were barred by the Sixth Amendment. Id. at 830. The court stated that there was “no immediate threat” to the victim and “no emergency in progress” because the police had separated the abusive husband from the wife, id. at 829-830, and it reasoned that when the officer questioned the victim, he was “not seeking to determine (as in Davis) ‘what is happening’ but rather ‘what happened.’ ” Id. at 830. The court concluded that “[o]bjectively viewed, the primary, if not indeed the sole, purpose of the interrogation was to investigate a possible crime.” Id.
{¶ 23} Ohio adopted the primary-purpose test in State v. Siler and, relying on Davis, held that the primary-purpose test applies to a child declarant’s statements made to police or to those the court determines to be police agents. In that case, we concluded that a child’s statement to a detective, after the crime *353 scene had been secured, was testimonial and not admissible under the Sixth Amendment.
{¶ 24} The United States Supreme Court recently clarified the primary-purpose test in Michigan v. Bryant, — U.S. -, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011), providing further explanation of the “ongoing emergency” discussed in Davis. In Bryant, police officers responded to a call about a shooting and found the victim, Anthony Covington, lying on the ground with a gunshot wound. The officers asked Covington, “ ‘what had happened, who had shot him, and where the shooting had occurred.’ ” Id. at 1150. Covington told the police that he and the defendant, Richard Bryant, had had a conversation through the back door of the defendant’s house. Covington explained that when he turned to leave, he was shot through the door but then drove to the gas station where the police found him; he died within hours. At trial, the police officers who spoke with Covington testified about what he had said.
{¶ 25} Determining that the primary purpose of the statements was to enable the police to deal with an ongoing emergency, the court held that Covington’s statements identifying the shooter as “Rick” and the location of the shooting were nontestimonial statements. Id. at 1166-1167. The court emphasized that determining whether the purpose of the interrogation is to deal with an ongoing emergency or to establish past events for later criminal prosecution is a factor in the analysis. Id. at 1160. The crux of the analysis of the circumstances of the encounter between the declarant and the police does not involve the subjective or actual purpose of the participants in the encounter but “the purpose that reasonable participants would have had” as determined from the participant’s statements and actions and the circumstances involved. Id. at 1156. The focus must be on the perspective of the parties at the time of the interrogation and not in hindsight. “If the information the parties knew at the time of the encounter would lead a reasonable person to believe that there was an emergency, even if that belief was later proved incorrect, that is sufficient for purposes of the Confrontation Clause.” Id. at 1157, fn. 8.
{¶ 26} The court explained that “whether an emergency exists and is ongoing is a highly context-dependent inquiry.” Id. at 1158. It noted that the zone of potential victims is more narrow in domestic-violence cases than in cases of public threat and that the neutralization of harm to the first victim does not end the assessment of whether an emergency is ongoing, because there may be a continuing threat to first responders or the public at large. Id.
{¶ 27} In addition, the court reiterated its earlier observation that “ ‘a conversation which begins as an interrogation to determine the need for emergency assistance’ ” can “ ‘evolve into testimonial statements.’ ” Id. at 1159, quoting Davis, 547 U.S. at 828, 126 S.Ct. 2266, 165 L.Ed.2d 224. This evolution occurs, *354 for example, when “a declarant provides police with information that makes clear that what appeared to be an emergency is not or is no longer an emergency or that what appeared to be a public threat is actually a private dispute” or when “a perpetrator is disarmed, surrenders, is apprehended, or, as in Davis, flees with little prospect of posing a threat to the public.” Id.
{¶ 28} Although the existence of an ongoing emergency is important, the court stressed that it is but one factor to be considered when determining the primary purpose of an interrogation. Id. The informality of the encounter might also be assessed, because “formality suggests the absence of an emergency and therefore an increased likelihood that the purpose of the interrogation is to ‘establish or prove past events potentially relevant to later criminal prosecution.’ ” Id., quoting Davis at 822. Because the police had encountered a “fluid and somewhat confused” situation, id. at 1166, the court in Bryant concluded that the questioning by police lacked formality because it “occurred in an exposed, public area, prior to the arrival of emergency medical services, and in a disorganized fashion.” Id. at 1160.
{¶29} “In addition to the circumstances in which an encounter occurs, the statements and actions of both the declarant and interrogators provide objective evidence of the primary purpose of the interrogation.” Id. The court further stated that objectively determining the primary purpose of the interrogation, by examining the statements and actions of the participants, was the approach most consistent with its past holdings. Id. at 1162.
{¶ 30} Applying the primary-purpose test to L.P.’s statement compels the conclusion that it was testimonial; no ongoing emergency existed, nor had L.P. complained about his injuries or needed emergency medical care. Rather, his teachers acted to fulfill their duties to report abuse. In fact, Whitley testified that “when the children come in, we’re supposed to always observe them, look for different things, what’s going on with them.” At a minimum, when questioning a child about suspected abuse in furtherance of a duty pursuant to R.C. 2151.421, a teacher acts in a dual capacity as both an instructor and as an agent of the state for law-enforcement purposes.
{¶ 31} Here, the nature and focus of the questions asked indicate a purpose to ascertain facts of potential criminal activity and identify the person or persons responsible. Thus, because the teachers acted as agents of the state for law-enforcement purposes, the appropriate test to be applied is the primary-purpose test. Bryant directs that the statements and actions of an interrogator as well as a declarant must be examined to determine the primary purpose of the declarant’s statements.
{¶ 32} The record reveals that no emergency existed either at the time Whitley observed L.P. or when Jones questioned him. His teachers were “shocked” by *355 his injuries and immediately suspected child abuse; they separated L.P. from other students and in a formal question-and-answer format, they sought facts concerning past criminal activity to identify the person responsible, eliciting statements that “are functionally identical to live, in-court testimony, doing ‘precisely what a witness does on direct examination.’ ” Melendez-Diaz v. Massachusetts, 557 U.S. 305, 310-311, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), quoting Davis, 547 U.S. at 830, 126 S.Ct. 2266, 165 L.Ed.2d 224.
{¶ 33} Thus, the primary purpose of that inquiry was not to extricate the child from an emergency situation or to obtain urgently needed medical attention, but rather was an information-seeking process to determine what had occurred in the past and who had perpetrated the abuse, establishing past events potentially relevant to later criminal prosecution. L.P.’s statements identifying Clark as responsible for his injuries are therefore testimonial and should have been excluded from evidence pursuant to the Confrontation Clause.
Conclusion
{¶ 34} For these reasons, the admission of L.P.’s statements violated Clark’s right to confrontation, and the judgment of the court of appeals is affirmed.
{¶ 35} The passionate rant of the dissent and its parade of horribles to the contrary, today’s majority decision supports a basic constitutional right guaranteed to all accused of crime by the Sixth Amendment of the United States Constitution: “the right * * * to be confronted with the witnesses against him.” In this case, a three-year-old allegedly uttered a statement identifying Clark but never testified in court because the judge determined him to be incompetent to testify at trial six months after he had uttered the identification.
{¶ 36} Statements elicited from a child by a teacher in the absence of an ongoing emergency and for the primary purpose of gathering information of past criminal conduct and identifying the alleged perpetrator of suspected child abuse are testimonial in nature in accordance with Davis v. Washington, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), and State v. Siler, 116 Ohio St.3d 39, 2007-Ohio-5637, 876 N.E.2d 534.
Judgment affirmed.
Pfeifer, Kennedy, and O’Neill, JJ., concur.
O’Connor, C.J., and Lanzinger and French, JJ., dissent.