# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>          Respondent,<br><br>          v.<br><br>FRANCISCO JAVIER VALDIVIA-<br>ENRIQUEZ,<br><br>          Appellant. | No. 77414-0-I<br><br>ORDER GRANTING MOTION<br>FOR RECONSIDERATION,<br>WITHDRAWING OPINION,<br>AND SUBSTITUTING OPINION |

Respondent State of Washington moved for reconsideration of the opinion filed in the above matter. Appellant Francisco Valdivia-Enriquez filed a response. The court has determined that respondent's motion for reconsideration should be granted, the opinion should be withdrawn, and a substitute opinion be filed.

Now, therefore, it is hereby

ORDERED that respondent's motion for reconsideration is granted. It is further

ORDERED that the opinion filed on May 4, 2020, is withdrawn and a substitute unpublished opinion be filed.

_____
Chun, J.

_____
Leach, J.

_____
Appelwick, J.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                    Respondent,<br>     v.<br><br>FRANCISCO JAVIER VALDIVIA-<br>ENRIQUEZ,<br><br>                    Appellant. | No. 77414-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUN, J. — A jury convicted Francisco Javier Valdivia-Enriquez of one count of rape of a child in the first degree and one count of rape of a child in the second degree. The charges stemmed from incidents occurring years earlier when the victim, J.M.A.H., was a child. By the time of the charges, J.M.A.H. was 20 years old. On appeal, Valdivia-Enriquez claims (1) the trial court erred in denying his motion to admit evidence of J.M.A.H.'s juvenile criminal record, and (2) the State engaged in prosecutorial misconduct by vouching for the credibility of J.M.A.H. We affirm. However, we remand the case for the trial court to strike the DNA collection fee from the Judgment and Sentence.[1]

## I. BACKGROUND

When he was 20 years old, J.M.A.H. had a sexual encounter with his girlfriend that caused bad memories to resurface. J.M.A.H then revealed to his

---

[1] This matter comes to us on remand from our Supreme Court for reconsideration in light of State v. Arndt, 194 Wn.2d 784, 453 P.3d 696 (2019).

girlfriend that his former soccer coach and friend, Valdivia-Enriquez, molested and raped him as a child. His girlfriend convinced J.M.A.H. to report the abuse to the police. The State charged Valdivia-Enriquez with one count of rape of a child in the first degree and one count of rape of a child in the second degree.

Prior to trial, Valdivia-Enriquez moved to admit evidence of J.M.A.H.'s lengthy juvenile criminal record, including multiple adjudications for theft-related residential burglary, as well as an adjudication for possession of stolen property and theft of a firearm. Valdivia-Enriquez requested admission of this evidence under ER 609(d) and ER 404(b) and sought to admit this evidence to demonstrate that J.M.A.H. made the accusations of sexual assault to repair the family relationships strained by his prior juvenile criminal behavior. Valdivia-Enriquez also hoped to admit the juvenile convictions for the jury to evaluate and assess J.M.A.H.'s credibility. The trial court denied admission of this evidence.

A jury convicted Valdivia-Enriquez as charged. The trial court sentenced Valdivia-Enriquez to a standard range sentence and imposed legal financial obligations, including a $100 DNA collection fee.

Valdivia-Enriquez appeals.

## II. DISCUSSION

### A. Right to Present a Defense

Valdivia-Enriquez argues the trial court deprived him of the right to present a defense by prohibiting him from impeaching J.M.A.H. with evidence of prior juvenile convictions for crimes of dishonesty. We disagree.

The Sixth Amendment to the United States Constitution and article 1, section 22 of the Washington Constitution grant criminal defendants the right to present a defense and the right to confront and cross-examine adverse witnesses. State v. Hudlow, 99 Wn.2d 1, 14-15, 659 P.2d 514 (1983). However, the right to present a defense is not absolute. State v. Jones, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). It is subject to the established rules of evidence. State v. Lizarraga, 191 Wn. App. 530, 553, 364 P.3d 810 (2015). "Defendants have a right to present only relevant evidence, with no constitutional right to present irrelevant evidence." Jones, 168 Wn.2d at 720 (emphasis omitted). Additionally, courts may deny cross-examination if the evidence sought is vague, argumentative, or speculative. State v. Darden, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002).

For claims alleging a violation of the right to present a defense, "we apply [a] two-step review process to review the trial court's individual evidentiary rulings for an abuse of discretion and to consider de novo the constitutional question of whether these rulings deprived [the defendant] of [their] Sixth Amendment right to present a defense." State v. Arndt, 194 Wn.2d 784, 797-98, 453 P.3d 696 (2019).

1. Review of Evidentiary Rulings for Abuse of Discretion

    a. Credibility

Valdivia-Enriquez requested admission of J.M.A.H.'s prior juvenile adjudications to impeach credibility. ER 609 governs the admissibility of prior convictions for crimes of dishonesty for purposes of attacking credibility.

3

ER 609(d) generally bars admission of evidence of juvenile adjudications to impeach credibility. But the court may allow evidence of juvenile convictions "if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence." ER 609(d). This requires an "indication of special reasons favoring admissibility" amounting to "a positive showing that the prior juvenile record is necessary to determine guilt." State v. Gerard, 36 Wn. App. 7, 12, 671 P.2d 286 (1983). The trial court has broad discretion on admissibility of juvenile adjudications sought solely for general impeachment purposes. Gerard, 36 Wn. App. at 11.

Valdivia-Enriquez fails to establish any special reason favoring admission of evidence otherwise inadmissible. Therefore, the trial court did not err in finding the prior adjudications unnecessary for a fair determination of guilt or innocence and properly exercised its broad discretion to deny admission of the evidence.

b. Motive

Valdivia-Enriquez also sought admission of the juvenile convictions to support his defense that J.M.A.H. made the allegations of molestation in order to improve J.M.A.H.'s strained relationship with his family. Valdivia-Enriquez argued the convictions showed motive:

> As far as for motive, it's on the basis of why he and his family might be on bad footing and why, as a way to get back on better footing with his family, it would explain, "All my behavior was kind of based on the fact that Mr. Valdivia had done this horrible things [sic] to me, and that's why I had all these indiscretions and everything," and now

4

that he has revealed it, his life -- his relationship with his family is much better and they moved along and things like that.

The trial court determined the evidence lacked a sufficient nexus with the alleged motive, and that the prejudicial impact outweighed the very low probative value of the evidence.

ER 404(b) allows admission of evidence of other crimes to show motive. Prior juvenile adjudications are also admissible to show bias or motive. Gerard, 36 Wn. App. at 11. Even when relevant to prove motive, the trial court must evaluate the evidence under ER 403 and "exercise its discretion in excluding relevant evidence if its undue prejudice substantially outweighs its probative value." State v. Fuller, 169 Wn. App. 797, 829-30, 282 P.3d 126 (2012).

Valdivia-Enriquez requested admission of J.M.A.H.'s prior juvenile adjudications to show motive. Upon inquiry from the trial court, Valdivia-Enriquez acknowledged he lacked any proof that the prior convictions led to the strained relationship between J.M.A.H. and his family. The evidence of motive was "inference with a few steps" from anticipated testimony of an "icy" family relationship prior to J.M.A.H.'s disclosure of the abuse. Valdivia-Enriquez also admitted that he could raise this defense without the juvenile adjudications: "I could do that without convictions. I believe that that provides a little bit of a further story."

Based on these statements, J.M.A.H.'s prior juvenile adjudications were not essential to Valdivia-Enriquez's defense. The trial court properly found very low or "non-existent" probative value of the juvenile adjudications. Moreover, the link between J.M.A.H.'s juvenile record and the alleged motive was merely

5

speculation. Denial of this speculative evidence falls within the court's discretion. See Darden, 145 Wn.2d at 621. The trial court did not abuse its discretion by denying admission of the juvenile adjudications as evidence of motive.

2. De Novo Review of Right to Present a Defense

Having determined that the trial court did not abuse its discretion by excluding the evidence of J.M.A.H.'s prior juvenile adjudications, we turn to the constitutional question of whether these rulings deprived Valdivia-Enriquez of his Sixth Amendment right to present a defense.

As stated above, a defendant's right to present a defense is not absolute. Courts must balance "the State's interest in excluding evidence . . . against the defendant's need for the information sought to be admitted." Arndt, 194 Wn.2d at 812. In certain instances, where evidence has high probative value, no state interest is compelling enough to prevent admission of the evidence consistent with the right to present a defense. Arndt, 194 Wn.2d at 812. And our Supreme Court determined that an evidentiary exclusion violated the Sixth Amendment where it prevented the defendant from arguing their entire defense. Jones, 168 Wn.2d at 721, 723-24.

Here, unlike in Jones, the court excluding evidence of J.M.A.H.'s prior juvenile adjudications did not preclude Valdivia-Enriquez from presenting his entire defense. Similar to Arndt, which involved limitations on expert testimony, Valdivia-Enriquez was able to advance his defense theory despite the trial court's exclusion of evidence of J.M.A.H.'s prior juvenile adjudications. See Arndt, 194 Wn.2d at 814; see also State v. Clark, 187 Wn.2d 641, 653, 389 P.3d 462 (2017)

6

(defendant remained able to offer evidence to support his theories notwithstanding limitations on expert witness testimony). Valdivia-Enriquez's theory at trial was that J.M.A.H. lied about the sexual abuse to explain an awkward sexual encounter with his girlfriend and continued to lie to improve his relationship with his parents. To support this theory, Valdivia-Enriquez sought to admit the evidence of J.M.A.H.'s prior juvenile adjudications to impeach his credibility and to show a motive for him to continue to lie about the abuse. But Valdivia-Enriquez was able to make these arguments even without evidence of J.M.A.H.'s prior juvenile adjudications. For instance, in his opening argument, Valdivia-Enriquez asked the jury to "[t]hink about the way in which a story starts small and then balloons up" and to "tell the difference between someone who has committed, like seriously committed to maintaining the story that they've been telling . . . and someone who's telling the actual facts as they occur."

Valdivia-Enriquez also asserted that J.M.A.H. lied about the abuse in his closing argument:

> People tell big lies that they maintain for years and years that they will take to their grave. People tell big lies that are so convincing that they convince their friends and their family, that they can convince crowds of strangers, that they can convince the entire nation that this thing happened.

Valdivia-Enriquez then asserted that J.M.A.H. "need[ed] a very good reason for why [he] reacted" the way he did after the sexual encounter with his girlfriend and that the lie "start[ed] on a night of crisis in a young relationship." Valdivia-Enriquez contended that J.M.A.H. continued the lie because his "stern,

authoritative father" had "finally loosened up a little bit" and his mother had "came to him in tears, begging for forgiveness."

Thus, Valdivia-Enriquez presented his defense that J.M.A.H. had lied about the sexual abuse and provided a motive for his reason to lie. Indeed, Valdivia-Enriquez acknowledged below that he could make his argument regarding motive without evidence of J.M.A.H.'s prior juvenile adjudications. Although the trial court limited the evidence with which Valdivia-Enriquez could use to argue his defense theory, the court did not violate his Sixth Amendment rights.

## B. Prosecutorial Misconduct

Valdivia-Enriquez asserts the prosecutor engaged in misconduct that deprived him of his right to a fair trial by vouching for the credibility of the sole witness against him. The State contends the prosecutor did not express a personal belief regarding the witness's credibility. Instead, the State argues the prosecutor drew reasonable inferences from the evidence. We agree with the State.

The prosecutor referred to J.M.A.H. as credible on multiple occasions during her closing argument. The record shows the prosecutor making statements such as "Ladies and gentlemen, [J.M.A.H.] is credible, and the reason why we know that the State proved this case beyond a reasonable doubt really comes down to that," and "It comes down to the fact that the credibility of [J.M.A.H.] is without question. Without question." Valdivia-Enriquez argues that

these instances, as well as other examples discussed below, indicate prosecutorial misconduct.

A defendant that claims prosecutorial misconduct must prove that the prosecutor's comments were both improper and prejudicial. In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). A prosecutor's comments are prejudicial only if there is a "'substantial likelihood the misconduct affected the jury's verdict.'" State v. Yates, 161 Wn.2d 714, 774, 168 P.3d 359 (2007) (emphasis omitted) (quoting State v. McKenzie, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)). Where, as here, the defendant failed to object to an improper remark below, such failure "'constitutes a waiver of error unless the remark is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.'" State v. Thorgerson, 172 Wn.2d 438, 443, 258 P.3d 43 (2011) (quoting State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)). "Jurors are presumed to follow the court's instruction." In re Pers. Restraint of Phelps, 190 Wn.2d 155, 172, 410 P.3d 1142 (2018).

Prosecutors have "wide latitude to draw and express reasonable inferences from the evidence" in their closing arguments. State v. Robinson, 189 Wn. App. 877, 893, 359 P.3d 874 (2015). "The prejudicial effect of a prosecutor's improper comments is not determined by looking at the comments in isolation but by placing the remarks 'in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions

given to the jury.'" State v. McKenzie, 157 Wn.2d 44, 52, 134 P.3d 221 (2006) (quoting State v. Brown, 132 Wn.2d 529, 561, 940 P.2d 546 (1997)).

Prosecutorial misconduct by vouching occurs when the prosecutor either (1) places the prestige of the government behind the witness, or (2) indicates that information that was not presented to the jury supports the witness's testimony. Robinson, 189 Wn. App. at 892–93. Further, there is a difference between the prosecuting attorney's individual opinion presented as an independent fact, and "'an opinion based upon or deduced from the testimony in the case.'" McKenzie, 157 Wn.2d at 53 (emphasis omitted) (quoting State v. Armstrong, 37 Wash. 51, 54–55, 79 P. 490 (1905)).

Valdivia-Enriquez cites an instance in which the prosecutor, as part of a PowerPoint presentation, presented a slide entitled "[J.M.A.H.] is credible." In isolation, such a title may suggest prosecutorial vouching, but the content and context of the slide shows otherwise. Following the title, the prosecutor listed four bullet points as a means to guide the jury during her discussion of the witness's credibility. The bullet points, "NO MOTIVE," "Disclosure," "Corroboration," and "Demeanor," mirrored the prosecutor's talking points as she asserted why the evidence supported the witness's credibility. The prosecutor cited examples from the record that demonstrated the lack of "bad blood" between Valdivia-Enriquez and the witness's family to emphasize the lack of motive, as well as the dubious likelihood that the witness could provide "the performance of a lifetime" and continuously feign distraught emotions, such as crying, as he recounted the events. This allowed the jury to consider the

evidence and make inferences about credibility and in turn did not demonstrate prosecutorial vouching for J.M.A.H.'s credibility.

Valdivia-Enriquez also asserts the prosecutor vouched for the witness through statements such as "we know [J.M.A.H.] is credible" and that the witness's credibility was "without question." Again, the court cannot view such comments in isolation. When viewed in context, the comments express reasonable inferences from the evidence. For example, the prosecutor followed "we know [J.M.A.H.] is credible" with a reminder of the situation in which the witness first disclosed the incident to emphasize the witness's motivation:

> . . . [J.M.A.H.] was in the middle of an act with his girlfriend that was supposed to be interesting and fun and new, but it went horribly south when he hurt her and all of these memories flooded back into his back [sic]. He described a physical, visceral response to seeing pain and fear in his girlfriend's eyes because he was placing himself in the shoes of the person who had done it to him.

The prosecutor used this example along with the surrounding evidence following the incident to corroborate the credibility of the witness.

Further examples, such as the witness's desire to quit soccer, his emotional withdrawal from family, and his motivation for disclosing the crime, provided the jury with evidence to consider as it evaluated the witness's credibility. The prosecutor addressed credibility by examining the witness's retelling of the incident and resulting emotional behavior after the incident, and thereby did not inappropriately vouch for the witness's credibility.

In light of the foregoing, we conclude that the prosecutor did not place the prestige of the government behind the witness or cite information not provided as

11

evidence to the jury in order to support the witness's testimony. As a result, Valdivia-Enriquez fails to prove prosecutorial misconduct through vouching.

Even if Valdivia-Enriquez were able to successfully argue the comments were improper, he fails to prove his additional burden that the prejudice resulting from the prosecutor's flagrant and ill-intentioned comments was not curable by a jury instruction. Valdivia-Enriquez argues that the comments would unduly influence the jurors. However, the prosecution reminded the jury during its closing argument that it was up to the jury to "go back into that room to determine who was credible, what testimony was credible." Furthermore, the jury instructions in this case ordered jurors to disregard remarks and comments of any lawyer if they are inconsistent with the law or evidence, while also reminding jurors that the lawyers' statements are not evidence. In addition, the jury instructions informed jurors that they are "the sole judges of the credibility of each witness."

Had Valdivia-Enriquez objected to the prosecutor's statements during closing arguments, the trial court could have reiterated these jury instructions. Because jurors are presumed to follow the court's instructions, and because the instructions told the jurors to consider themselves the only determiners of credibility, Valdivia-Enriquez cannot demonstrate that the comments resulted in prejudice.

C. DNA Fee

Valdivia-Enriquez and the State both request remand for the trial court to strike the $100 DNA collection fee because the State previously collected

Valdivia-Enriquez's DNA due to prior convictions.  A legislative amendment effective June 7, 2018, eliminated the mandatory $100 DNA collection fee where "the state has previously collected the offender's DNA as a result of a prior conviction."  RCW 43.43.7541.  This amendment applies prospectively to Valdivia-Enriquez due to his pending direct appeal at the time of the amendment's enactment.  State v. Ramirez, 191 Wn.2d 732, 747, 426 P.3d 714 (2018).  As a result, we remand for the trial court to strike the DNA fee from the Judgment and Sentence.

Affirmed.  Remanded to strike the DNA collection fee.

_____
Chun, J.

WE CONCUR:

_____
Leach, J.

_____
Appelwick, J.

13