[Cite as *State v. Clark*, 2016-Ohio-2825.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 96207**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DARIUS CLARK

DEFENDANT-APPELLANT

---

**JUDGMENT:**
CONVICTIONS AFFIRMED AND REMANDED FOR
RESENTENCING

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-10-536300-A

**BEFORE:** Blackmon, J., E.A. Gallagher, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** May 5, 2016

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender

By:   Nathaniel McDonald
Erika B. Cunliffe
Jeffrey Gamso
Assistant Public Defenders
310 Lakeside Avenue
Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Jennifer A. Driscoll
Mark J. Mahoney
Matthew E. Meyer
Anthony Thomas Miranda
Assistant County Prosecutors
9th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

**{¶1}** This case is before us on remand from the United States Supreme Court and the Ohio Supreme Court to review the admissibility of a child victim's statements to his teachers under Evid.R. 807.

**{¶2}** On November 22, 2010, a jury convicted Darius Clark of multiple counts of felonious assault, endangering children, and domestic violence in relation to the abuse of Clark's girlfriend's two children, A.T. and L.P. The trial court subsequently sentenced Clark to 28 years in prison, and Clark appealed. For a thorough recitation of the facts, *see State v. Clark*, 8th Dist. Cuyahoga No. 96207, 2011-Ohio-6623 (*"Clark I"*); *State v. Clark*, 137 Ohio St.3d 346, 2013-Ohio-4731, 999 N.E.2d 592 (*"Clark II"*); and *Ohio v. Clark*, 576 U.S. ____, 135 S.Ct. 2173, 192 L.Ed.2d 306 (2015) (*"Clark III"*). The procedural history of the case leading up to remand follows.

**{¶3}** On December 22, 2011, this court reversed Clark's convictions and ordered a new trial, finding that the trial court's ruling L.P. incompetent to testify was incompatible with the admissibility of L.P.'s out-of-court statements identifying Clark as L.P.'s abuser. *Clark I.* This court ruled that the police detective's, social workers', and teachers' testimonies violated the Sixth Amendment Confrontation Clause to the United States Constitution and that L.P.'s relatives' testimonies were inadmissible under Evid.R. 807. *Id.* This court also found that there was sufficient evidence in the record to support a finding that L.P. suffered serious physical harm in relation to the felonious assault and endangering children convictions. *Id.*

**{¶4}** The Ohio Supreme Court accepted the state's appeal of *Clark I*, challenging one issue only: "whether the trial court violated Darius Clark's constitutional right to confront the witnesses against him when it admitted a hearsay statement that three-and-a-half-year-old L.P. made to his preschool teachers * * * in response to questions asked about his injuries to his eye and marks on his face observed upon his arrival at a preschool day care." *Clark II* at ¶ 1. In affirming *Clark I*, the Ohio Supreme Court held that "the statement L.P. made to his preschool teacher is testimonial in nature, and its admission into evidence violated Clark's right to confront witnesses under the Sixth Amendment to the United States Constitution." *Clark II* at ¶ 4.

**{¶5}** The United States Supreme Court reversed *Clark II*, holding that "the Sixth Amendment did not prohibit the state from introducing L.P.'s statements at trial * * * [because] L.P.'s statements to his teachers were not testimonial." *Clark III* at 2182-2183.

**{¶6}** When a statement is not testimonial in nature, its admissibility "is the concern of state and federal rules of evidence, not the Confrontation Clause." *Clark III* at 2180, citing *Michigan v. Bryant*, 562 U.S. 344, 359, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011). Accordingly, we now review the admissibility of L.P.'s statements to his teachers under Evid.R. 807. Additionally, we review the assignments of error this court rendered moot in *Clark I*.[1] Upon review, we affirm Clark's convictions and remand this case for a limited resentencing hearing.

---

[1] *See* appendix.

# I.  Admissibility of L.P.'s Statements to Teachers Under Evid.R. 807

**{¶7}**   Evid.R. 807 governs the admissibility of a child's out-of-court statement in abuse cases and states, in pertinent part, as follows:

(A) An out-of-court statement made by a child who is under twelve years of age at the time of trial or hearing * * * describing any act of physical violence directed against the child is not excluded as hearsay * * * if all of the following apply:

(1) The Court finds that the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness that make the statement at least as reliable as statements admitted pursuant to [other hearsay exceptions].  The circumstances must establish that the child was particularly likely to be telling the truth when the statement was made and that the test of cross-examination would add little to the reliability of the statement.  In making its determination of the reliability of the statement, the court shall consider all of the circumstances surrounding the making of the statement, including but not limited to spontaneity, the internal consistency of the statement, the mental state of the child, the child's motive or lack of motive to fabricate, the child's use of terminology unexpected of a child of similar age, the means by which the statement was elicited, and the lapse of time between the act and the statement.  In making this determination, the court shall not consider whether there is independent proof of the * * * act of physical violence.

(2) The child's testimony is not reasonably obtainable by the proponent of the statement.

(3) There is independent proof of the * * * act of physical violence.

(4) At least ten days before the trial or hearing, a proponent of the statement has notified all other parties in writing of the [particulars] of the statement.

**{¶8}**   On remand in the case at hand, the parties agree that Evid.R. 807(A)(2) and (4) are satisfied.   Therefore, our analysis of the admissibility of L.P.'s statements to his teachers is twofold: first, whether L.P. "was particularly likely to be telling the truth when the statement was made and [whether] the test of cross-examination would add little to

the reliability of the statement"; and second, whether there was independent proof of the abuse. Evid.R. 807(A)(1) and (3).

A. Reliability of Statements

{¶9} The first of L.P.'s teachers to testify was Ramona J. Whitley. She testified that L.P. had been in her class for two-to-three weeks when, on March 17, 2010, she noticed that his eye was red. She asked him what happened. At first, L.P. said nothing happened. She asked again, and L.P. said he fell down. Whitley brought L.P. into a classroom where the lighting was better and noticed red marks on his head.

{¶10} Whitley further inquired of L.P. as to what happened, and eventually L.P. "mentioned" the name "Dee," which is Clark's nickname. Whitley testified that she did not see any marks on L.P. the previous day, March 16, 2010. According to Whitley, L.P.'s mom picked him up from school on March 16, 2010, and Clark dropped L.P. off at school on March 17, 2010.

{¶11} The second teacher of L.P.'s to testify was Debra Jones. She testified that on March 17, 2010, L.P. had been a student of hers "maybe a week or two." According to Jones, on March 17, 2010, Whitley brought to her attention "signs of redness" near L.P.'s eye and around his neck. Jones brought L.P. to her supervisor's office. Jones's supervisor lifted L.P.'s shirt up, and the two teachers "saw enough to make the call" to report child abuse. Jones also testified that she did not see any red marks on L.P.'s eye,

neck, or head the previous day, March 16, 2010. Jones testified that when she asked L.P., "What happened to you?" L.P. "said something like, Dee, Dee."

{¶12} Pursuant to Evid.R. 807, in determining whether L.P. "was particularly likely to be telling the truth," this court must consider the following factors: "spontaneity, the internal consistency of the statement, the mental state of the child, the child's motive or lack of motive to fabricate, the child's use of terminology unexpected of a child of similar age, the means by which the statement was elicited, and the lapse of time between the act and the statement."

{¶13} Upon review, we find that L.P.'s statements were elicited "in response to questions asked" by his teachers and not strictly spontaneous. *Clark II* at ¶ 1. As to internal consistency, although L.P. initially gave three different answers to his teachers' questions about who abused him, "Dee" was the only person whose name L.P. said. We find no evidence in the record regarding a motive or lack of motive to fabricate. As to the terminology of L.P.'s statement, identifying "Dee," we find nothing unexpected about this language from a three-year-old. As to the lapse of time between the act and the statement, L.P.'s teachers testified that they did not notice bruises on L.P.'s head or around his eye on March 16, 2010, but that the bruises and/or marks were visible the next day, on March 17, 2010. Additionally, the emergency room physician testified that he examined L.P. on March 18, 2010, and some of the bruising appeared brand new and some of it was "days or longer older."

B. Independent Proof of Abuse

**{¶14}** A plain reading of Evid.R. 807(A)(3) requires "independent proof of the sexual act or act of physical violence." In the case at hand, there is independent testimonial, documentary, and photographic evidence of the physical violence L.P. suffered. Whether the abuse happened is not in question.

**{¶15}** Upon review, we find that L.P.'s statements to his teachers were made under unique circumstances. Teachers have a special relationship with children, and R.C. 2151.421, which governs a teacher's duty to report child abuse, was designed "as a mechanism for identifying and protecting abused and neglected children at the earliest possible time." *Yates v. Mansfield Bd. of Edn.*, 102 Ohio St.3d 205, 2004-Ohio-2491, 808 N.E.2d 861, ¶ 24.

**{¶16}** Teachers, "when acting in their official or professional capacity, hold unique positions in our society. They are not only the most likely and qualified persons to encounter and identify abused and neglected children, but they are often directly responsible for the care, custody, or control of these children in one form or another." *Id*. at ¶ 30. Upon review, we find that L.P.'s teachers are in a more objective position than L.P.'s family members to question L.P. about domestic violence.

**{¶17}** Accordingly, L.P.'s statements to his teachers identifying Clark as his abuser are admissible under Evid.R. 807. Therefore, we find no error in the court's admission of these statements. Accordingly, Clark's third and fourth assigned errors are overruled.

## II.   Manifest Weight of the Evidence

**{¶18}** In Clark's second assigned error, he argues that L.P.'s mother's ("Mother") "testimony was so incredible that the jury could not reasonably conclude that * * * Clark was the perpetrator beyond a reasonable doubt."

**{¶19}** In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

> The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 1997- Ohio-52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. *Id.* at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id.* at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Id.* at 387, 678 N.E.2d 541. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees

with the factfinder's resolution of the conflicting testimony." *Id.* at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

{¶20} An appellate court may not merely substitute its view for that of the jury, but must find that "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387. Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case that the evidence weighs heavily against the conviction." *Id.*

{¶21} Mother testified that late on the night of March 16, 2010, she left L.P. and A.T. with Clark while she went out of town to prostitute herself under Clark's direction. Mother testified that when she left, A.T. had burn marks on her. Mother questioned Clark about the marks, and he said A.T. burned herself on a hot comb. Mother testified that there were no marks on L.P. when she left.

{¶22} Mother testified that she received a phone call from a social worker on March 17 or March 18, right after she arrived in Washington, D.C., informing her that her children had been abused. Mother testified that she lied to social workers and family members about her whereabouts because she did not want them taking her children away or knowing she was a prostitute. Mother did not return to Cleveland until she was arrested five months later in August. Mother denied abusing L.P. and A.T. and testified that she never saw Clark hit or abuse her children.

**{¶23}** Upon review, we find that Clark's convictions are not against the manifest weight of the evidence. Determining Mother's credibility was within the province of the jury. *State v. DeHaas*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). Furthermore, L.P. identified Clark as his abuser. We cannot say that the jury lost its way and committed a miscarriage of justice. Accordingly, Clark's second assigned error is overruled.

### III. Jury Instructions

**{¶24}** In his fifth assigned error, Clark argues that the court abused its discretion when it denied his request to instruct the jury that L.P. did not testify because the trial court found him incompetent to do so.

**{¶25}** "A trial court should give a proposed jury instruction if it is a correct statement of the law and is applicable to the facts of the particular case." *State v. Rose*, 8th Dist. Cuyahoga No. 89457, 2008-Ohio-1262, ¶ 18.

**{¶26}** In the case at hand, Clark argues that the jury should have been instructed as follows:

> [L.P.] did not testify in this case. At a prior hearing, this court found that [L.P.] was not competent to testify. As a result, it did not permit him to be called as a witness either by the state or the defense in this trial. * * * In light of the court's conclusion that [L.P.] was incompetent to testify, it is for you, to determine how much weight, if any, to give to alleged statements of [L.P.] that were offered by other witnesses.

**{¶27}** Clark's proposed instruction also included the five factors that the court considered when determining that L.P. was incompetent to testify.

**{¶28}** The court denied Clark's request for this jury instruction, reasoning that "[t]hese are guidelines for the court to [use] in determining the competency of a witness

to testify," and not proper charges to the jury. Upon review, we conclude that the gist of the proposed jury instruction is not a "statement of law"; rather, it is a factual finding made by the court after a hearing. Although the guidelines are "correct" statements, the point on which Clark attempted to instruct the jury was the court's conclusion or finding that L.P. was incompetent. Clark did not cite, and we do not find, any Ohio case law where the jury was instructed, properly or not, on an incompetency finding. Accordingly, Clark's fifth assigned error is overruled.

### IV. Duplicitous Indictment

{¶29} In Clark's sixth assigned error, he argues that "the state failed to separate distinct instances of alleged abuse into separate counts," thus resulting in a duplicitous indictment. Specifically, Clark argues that the felonious assault, child endangering, and domestic violence charges concerning each child are based on jury speculation because the evidence did not refer to any specific incidents of abuse. Clark further argues that the evidence presented at trial showed that A.T. "suffered numerous injuries, [but] [b]ecause of the identical counts in the indictment, it is impossible to tell whether the injuries that formed the basis of Counts 2, 3, 4, and 5 of the grand jury's indictment were the same injuries that the jury considered in reaching its verdict with respect to each count."

{¶30} Clark was indicted for the following nine counts: 1) felonious assault of L.P.; 2) felonious assault of A.T.; 3) felonious assault of A.T.; 4) felonious assault of A.T.; 5) felonious assault of A.T.; 6) child endangerment of L.P.; 7) child endangerment

of A.T.; 8) domestic violence against L.P.; and 9) domestic violence against A.T. The state alleged that all nine counts occurred between February 28, 2010 and March 17, 2010. Clark was convicted of eight counts and was acquitted of one of the felonious assault charges involving A.T.

**{¶31}** Mother testified that when she left town on March 16, 2010, at midnight, A.T. had burn marks on her face, arm, and chest. According to Mother, L.P. had no marks on him.

**{¶32}** Dr. Jeffrey Pennington testified that he examined L.P. and A.T. on March 18, 2010. According to the doctor, L.P. had abrasions and bruising "in different stages of development" on his face, upper torso, left chest, right shoulder, back, and both thighs. A.T. had burns on her chest, face, and buttocks, and her right hand was bruised and swollen. A.T. also had two black eyes and scab wounds and hair loss on her scalp.

**{¶33}** Dr. Pennington testified that most of L.P.'s injuries occurred "within days" before the medical exam and that his bruises were "in various stages of healing." A.T.'s injuries were possibly "weeks old." The doctor estimated that the injuries occurred between February 28 and March 18, 2010, although he did not testify about a more specific time frame for each injury.

**{¶34}** Pursuant to Crim.R. 8(A), a criminal indictment must contain "a separate count for each offense," and under Crim.R. 31(A), an accused is entitled to a unanimous jury verdict. When two or more separate offenses are joined in one count, the indictment is considered duplicitous because "unanimity may be compromised." *State v.*

*Ward*, 9th Dist. Lorain No. 09CA009720, 2011-Ohio-518, ¶ 5. In other words, "while the jury may agree that the defendant is guilty of [a] count, they may have not unanimously decided which set of facts resulted in the offense." *Id.*

### V. Multiple Identical and Undifferentiated Counts

**{¶35}** In his seventh assigned error, Clark argues that Counts 2, 3, 4, and 5, which charge him with felonious assault of A.T. between February 28 and March 17, 2010, violate his constitutional right of presentment to the grand jury, due process, and protection against double jeopardy. Specifically, Clark argues that "the four felonious assault counts regarding [A.T.] cannot be sustained based on the evidence presented." We note that Clark was acquitted of one count of felonious assault regarding A.T. and convicted of three counts. Nonetheless, the gist of Clark's argument is that he "cannot identify the conduct associated with each count in order to determine with accuracy to what extent he may plead a former acquittal or conviction."

**{¶36}** As support for this argument, Clark cites to a line of cases involving "carbon copy" indictments and stemming from *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) and *Valentine v. Konteh*, 395 F.3d 626 (6th Cir.2005).

> Numerous charges cannot be made out through estimation or inference. Instead, if prosecutors seek multiple charges against a defendant, they must link those multiple charges to multiple identifiable offenses. * * * Courts cannot uphold multiple convictions when they are unable to discern the evidence that supports each individual conviction.

*Valentine* at 636-637.

{¶37} There is no question that A.T. suffered abuse, and the evidence presented at trial concerned multiple injuries. Dr. Pennington testified about multiple wounds on various parts of A.T.'s body that were "days or weeks" old. In addition, Mother testified that on March 16, 2010, A.T. had burns on her body and no other injuries. It is undisputed that by March 18, 2010, A.T. had injuries on her body in addition to burns. Accordingly, we overrule Clark's sixth and seventh assigned errors.

## VI.   Allied Offenses

{¶38} Prior to being sentenced, Clark requested that the court merge his convictions into a single count regarding L.P. and a single count regarding A.T. The court denied Clark's request and sentenced him as follows: Eight years on each felonious assault charge, with three counts running consecutively; four years on each endangering children count, with one running consecutive to the 24 years for the assaults; and six months on each domestic violence charge, to run concurrently, for an aggregate sentence of 28 years in prison.

{¶39} Ohio case law and the interpretation of R.C. 2941.25, which governs multiple counts and allied offenses, has evolved since Clark's 2010 convictions. However, in *State v. Ketterer*, 140 Ohio St.3d 400, 2014-Ohio-3973, 18 N.E.3d 1199, the Ohio Supreme Court ruled that the new analysis for allied offenses was not to be applied retroactively. "We agree with the appellate courts that have declined to apply *Johnson* retroactively to judgments that were final as of the date that case was decided." *Id.* at ¶ 15.

**{¶40}** R.C. 2941.25 states as follows:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment may contain counts for all such offenses, and the defendant may be convicted of them all.

**{¶41}** At the time of Clark's convictions, the controlling law regarding allied offenses was *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181. Under *Cabrales*, the allied offense analysis did "not require a strict textual comparison under R.C. 2941.25(A). Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import." *Cabrales* at ¶ 26.

**{¶42}** Clark argues that his convictions for felonious assault, endangering children, and domestic violence should merge because they are allied offenses. To commit felonious assault under R.C. 2903.11(A)(1), an offender must knowingly cause serious physical harm to another. To commit endangering children under R.C. 2919.22(B)(1),

an offender must recklessly abuse a child.[2]   To commit domestic violence in violation of R.C. 2919.25(A), an offender must knowingly cause physical harm to a family or household member.

{¶43} Clark was convicted of recklessly abusing A.T. and L.P., who were children, knowingly causing serious physical harm to A.T. and L.P., and knowingly causing harm to A.T. and L.P., who were members of his household.   The Ohio Supreme Court has recognized that separate convictions may be upheld for each victim of a crime.   *See, e.g., State v. Jones*, 18 Ohio St.3d 116, 118, 480 N.E.2d 408 (1985).   *See also State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 45 ("[w]hen a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts").

{¶44}   This court has previously held that domestic violence and felonious assault are not allied offenses.

> [T]he elements do not correspond to such a degree that the commission of domestic violence necessarily results in the commission of felonious assault.   Domestic violence may occur without a felonious assault, where the harm does not rise to the level of serious physical harm.   Likewise, felonious assault may occur without domestic violence, where the victim is not a family or household member.

*State v. Sandridge*, 8th Dist. Cuyahoga No. 87321, 2006-Ohio-5243, ¶ 33.

---

[2] We note that endangering children in violation of R.C. 2919.22(A) encompasses creating "a substantial risk to the health or safety of the child"; however, Clark was not convicted of this offense.  Rather, Clark was convicted of the "abusing a child" subsection of child endangerment.

{¶45} Additionally, Ohio courts have held that "[f]elonious assault and child endangering have different culpable mental states," thus, they are not allied offenses of similar import. *State v. Journey*, 4th Dist. Scioto No. 09CA3270, 2010-Ohio-2555, ¶ 25. To commit felonious assault, one must act knowingly, and to commit child endangering, one must act recklessly. Furthermore, an assault victim need not be a child. Accordingly, Clark's convictions are not subject to merger under *Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, and his eighth assigned error is overruled.

## VII. Court Costs

{¶46} Clark argues, and the state concedes, that the reference to costs in his sentencing entry is improper, because the court did not impose a fine or costs at his sentencing hearing. *See State v. Lynch*, 8th Dist. Cuyahoga No. 90630, 2008-Ohio-5594, ¶ 12. The state requests that this matter be remanded to the trial court for a limited resentencing hearing to address court costs per the Ohio Supreme Court's directive in *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, ¶ 22. Clark's final assigned error is sustained, and this case is remanded for a limited resentencing hearing consistent with *Joseph*.

{¶47} Convictions affirmed and case remanded for a limited resentencing hearing.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

EILEEN A. GALLAGHER, P.J., and
TIM McCORMACK, J., CONCUR