[Cite as *State v. Clark*, 2021-Ohio-2771.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,            :

                                No. 110037

    v.                             :

DARIUS CLARK,                           :

    Defendant-Appellant.           :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 12, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-10-536300-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Katherine Mullin and Anthony T. Miranda,
Assistant Prosecuting Attorneys, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and
Erika B. Cunliffe, Assistant Public Defender; and David
W. Neel, *for appellant.*

LARRY A. JONES, SR., P.J.:

{¶ 1} Defendant-appellant, Darius Clark ("Clark"), appeals the trial court's

denial of his postconviction-relief petition. We affirm.

{¶ 2} In 2010, Clark was charged with multiple counts of felonious assault, endangering children, and domestic violence in relation to the abuse of Clark's girlfriend's two children: A.T. and L.P. The trial court subsequently sentenced Clark to 28 years in prison.[1]

{¶ 3} Briefly, the record reflects that Clark lived with his girlfriend, T.T., and her three-year-old son, L.P., and one-year-old daughter, A.T. On March 8, 2010, T.T. left her children in Clark's care for a few days while she went to visit a friend. When T.T. picked up the children around March 12, A.T. had burn marks on her face, arm, and chest. On March 16, according to T.T., she again left her children with Clark and went to Washington D.C. to prostitute herself under Clark's orders. The next day, March 17, L.P.'s teachers observed obvious injuries to L.P. L.P. disclosed to his teacher that "Dee" (Clark's nickname) caused the injuries. When social services picked up both children from relatives on March 18, both children had additional serious injuries, which were attributed to Clark.

{¶ 4} In *Clark I*, this court reversed Clark's convictions and ordered a new trial, finding that the trial court's ruling that L.P. was incompetent to testify was incompatible with the admissibility of L.P.'s out-of-court statements identifying Clark as L.P.'s abuser. This court ruled that the police detective's, social workers', and teachers' testimonies violated the Sixth Amendment Confrontation Clause to

---

[1]For a thorough recitation of the facts and procedural history of this case, *see State v. Clark*, 8th Dist. Cuyahoga No. 96207, 2011-Ohio-6623 ("*Clark I*"); *State v. Clark*, 137 Ohio St.3d 346, 2013-Ohio-4731, 999 N.E.2d 592 ("*Clark II*"); *Ohio v. Clark*, 576 U.S. 237, 135 S.Ct. 2173, 192 L.Ed.2d 306 (2015) ("*Clark III*"); and *State v. Clark*, 8th Dist. Cuyahoga No. 96207, 2016-Ohio-2825 ("*Clark IV*").

the United States Constitution and that L.P.'s relatives' testimonies were inadmissible under Evid.R. 807. *Id.* This court also found that there was sufficient evidence in the record to support a finding that L.P. suffered serious physical harm, an element of the felonious assault and endangering children convictions. *Id.*

{¶ 5} The Ohio Supreme Court accepted the state's appeal of *Clark I*, challenging

> whether the trial court violated Darius Clark's constitutional right to confront the witnesses against him when it admitted a hearsay statement that three-and-a-half-year-old L.P. made to his preschool teachers * * * in response to questions asked about his injuries to his eye and marks on his face observed upon his arrival at a preschool day care.

*Clark II* at ¶ 1. In affirming *Clark I*, the Ohio Supreme Court held that "the statement L.P. made to his preschool teacher is testimonial in nature, and its admission into evidence violated Clark's right to confront witnesses under the Sixth Amendment to the United States Constitution." *Clark II* at ¶ 4.

{¶ 6} The United States Supreme Court disagreed and reversed *Clark II*, holding that "the Sixth Amendment did not prohibit the state from introducing L.P.'s statements at trial * * * [because] L.P.'s statements to his teachers were not testimonial." *Clark III* at 2182-2183. The Court held that when a statement is not testimonial in nature, its admissibility "is the concern of state and federal rules of evidence, not the Confrontation Clause." *Clark III* at 2180, citing *Michigan v. Bryant*, 562 U.S. 344, 359, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011).

{¶ 7} The case was remanded to this court to review the assignments of error rendered moot in *Clark I*, specifically, L.P.'s statements to his teachers; whether Clark's convictions were against the manifest weight of the evidence; the jury instructions; claims of duplicitous indictment and multiple, undifferentiated counts; allied offenses; and court costs. This court found that L.P.'s statements were admissible under Evid.R. 807, affirmed Clark's convictions in all other respects, and remanded the case for a limited resentencing hearing to address court costs. *Clark IV.* Clark appealed to the Ohio Supreme Court that denied his discretionary appeal. *State v. Clark*, 147 Ohio St.3d 1474, 2016-Ohio-8438, 65 N.E.3d 778.

{¶ 8} Meanwhile, in 2011, Clark filed a postconviction-relief petition, attaching several affidavits from family members who, Clark argued, his attorney failed to call as defense witnesses. In 2020, the state filed proposed findings of fact and conclusions of law. Clark sought leave to amend his petition with several new claims of ineffective assistance of counsel. The trial court denied Clark's motion for leave to amend his petition and denied Clark's postconviction-relief petition without a hearing, issuing findings of fact and conclusions of law.

{¶ 9} It is from these two denials that Clark now appeals, raising the following assignments of error:

> I. The court's decision to summarily dismiss Darius Clark's petition for postconviction relief violated R.C. 2953.21 and his state and federal rights to due process where his petition included new evidence supporting a cognizable claim which required an evidentiary hearing.

II: The court's refusal to permit Mr. Clark to amend his petition or postconviction relief to allow additional information in support of his ineffective assistance of counsel based on the conclusion that the amendment was jurisdictionally barred violated R.C. 2953.21 and Clark's state and federal rights to due process.

III: Due process requires that the postconviction provisions the General Assembly enacted allow individuals challenging the validity of their convictions a meaningful opportunity to do so. Where the law is construed in such a way that it frustrates the ability to present such cognizable constitutional challenges it violates the postconviction relief statute and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

{¶ 10} Clark's right to postconviction relief arises from R.C. 2953.21(A)(1)(a), which provides:

(A)(1)(a) Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

{¶ 11} The postconviction relief process is a collateral civil attack on a criminal judgment. *State v. Steffen*, 70 Ohio St.3d 399, 410, 639 N.E.2d 67 (1994). Clark does not have a constitutional right to postconviction review. Rather, postconviction relief is a narrow remedy that affords appellant no rights beyond those granted by statute. *State v. Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (1999). A postconviction-relief petition does not provide Clark a second opportunity to litigate his conviction. *State v. Raver*, 10th Dist. Franklin No.

05AP-374, 2006-Ohio-645, ¶ 9, citing *State v. Hessler*, 10th Dist. Franklin No. 01AP-1011, 2002-Ohio-3321.

{¶ 12} In his 2011 postconviction-relief petition, Clark claimed that his trial counsel was ineffective because counsel failed to (1) fully investigate recorded jailhouse phone calls, (2) call certain witnesses for his defense, (3) present documentary evidence, (4) thoroughly cross-examine T.T. and the police detective, and (5) argued that counsel as a whole deprived him of a fair trial.

{¶ 13} Ineffective assistance of counsel claims are reviewed using the two-pronged approach set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "First, the defendant must show that counsel's performance was deficient.  * * * Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* '"[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."' *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989), quoting *Strickland* at 697. If one part cannot be proved, regardless of which or in which order, the analysis ends, and the claim for ineffective assistance of counsel fails. *Bradley* at *id.*

> "In evaluating counsel's performance, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances the challenged action "might be considered sound trial strategy.""'

*Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at paragraph three of the syllabus.

{¶ 14} In support of his petition, Clark attached the following evidence:

(1) Affidavit from Clark, in which he maintained his innocence. He claimed not to "whoop" children, and claimed that T.T. often physically disciplined her children. Clark stated that he spoke to T.T. from the county jail and T.T. admitted that she "whooped" L.P. the night before she left for Washington D.C. He also claimed that his brother, D.S., watched the kids in March 2010, and D.S. told Clark that A.T. fell and hit her head.

(2) Affidavit from Elaine Scales, Clark's mother. Scales claimed that T.T. threw L.P. in July 2008 and smacked him in the head. She also claimed that her other son, D.S., spent time at Clark's home in March 2010, which resulted in A.T. having a bruise and black eyes. Scales states that she told Clark's attorney this information but counsel did not call her as a witness to testify.

(3) Affidavit from Mia Clark, Clark's sister. She claims that she saw T.T. "whooping" her children. Mia states that she told Clark's attorney this information and he did not call her as a witness to testify.

(4) Affidavit from April Davis, the mother of Clark's other children. She claims that Clark has never hit his kids but she has seen T.T. slap her kids. Clark's attorney never spoke to Davis.

(5) Affidavit from D.S, Clark's brother. He claims that he stayed at Clark's home in March 2010. A.T. fell off the bed and hit her head. A.T. had a bloody nose and the next morning had two black eyes. D.S. was twelve years old when he signed the affidavit.

(6) Affidavit from Clark's trial counsel, who averred that he received recordings of phone calls made by Clark while in the Cuyahoga County jail. He "reviewed some, but not all" of these recordings.

(7) One page of a medical record relating to A.T.'s treatment on March 18, 2010.

(8) Audio recordings between Clark and T.T.'s grandmother.

(9) Audio recordings of Clark's jail phone calls.

(10) Video recording of police detective's interview of T.T.

{¶ 15} In the first assigned error, Clark contends that the trial court's decision to summarily dismiss his postconviction-relief petition violated R.C. 2953.21 and his state and federal rights to due process because his petition included new evidence that required an evidentiary hearing.

{¶ 16} A defendant is not automatically entitled to an evidentiary hearing on a postconviction-relief petition. *State v. Jackson*, 64 Ohio St.2d 107, 110, 413 N.E.2d 819 (1980). R.C. 2953.21(C) provides that, "[b]efore granting a hearing on a petition * * * the court shall determine whether there are substantive grounds for relief." The petitioner bears the initial burden of offering evidence that demonstrates a cognizable claim of constitutional error. *State v. Ibrahim*, 10th Dist. Franklin No. 14AP-355, 2014-Ohio-5307, ¶ 9. Because the burden is the petitioner's, a postconviction-relief petition may be denied without an evidentiary hearing when the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that the petitioner has offered sufficient operative facts to establish substantive grounds for relief. *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999), paragraph two of the syllabus. Appellate review of a trial court's denial of a postconviction-relief petition without

a hearing is for abuse of discretion. *State v. McBride*, 10th Dist. Franklin No. 14AP-237, 2014-Ohio-5102, ¶ 11.

{¶ 17} Clark argues that his trial counsel was ineffective in failing to call his relatives as witnesses to testify that (1) Clark would never purposely hurt a child and would especially not burn a baby, (2) the children's mother was physically violent with her children, and (3) the children's mother is a liar.

{¶ 18} Several family members signed affidavits saying Clark was generally not violent with children. The trial court, however, correctly determined that calling Clark's family members created "obvious credibility issues" for a jury given their incentive to testify in his favor. Additionally, the content of the witnesses' testimony related to Clark's general good behavior would have opened the door for the state to admit Clark's prior drug-trafficking convictions. These are justifiable reasons a trial attorney might not have used the witnesses' testimony.

{¶ 19} Clark cites this court's decision in *State v. Owens*, 8th Dist. Cuyahoga No. 1990 Ohio App. LEXIS 754 (Mar. 1, 1990), for the proposition that his attorney was ineffective for failing to call witnesses to testify on Clark's behalf. In *Owens*, the defendant was convicted of raping and kidnapping a woman. He filed a motion for new trial supported by statements from six potential witnesses that were not called at trial. *Id.* at 13-15.

{¶ 20} The victim in *Owens* claimed at trial that the defendant kept her in the home and she was not able to leave because the house door had special locks. *Id.* at 8. In his motion for new trial, the defendant provided potential testimony

from multiple witnesses that the victim was free to leave the defendant's house, use the defendant's telephones, was left alone in the house, the house did not have any special locks on the doors, and the victim was often seen outside the home on the porch or walking with just her child. *Id.* at 13-15.

{¶ 21} This case is distinguishable. As it relates to L.P.'s injuries, as the trial court found, "[n]one of the family members claim to have observed the infliction of the injuries to L.P." Findings of Fact and Conclusions of Law, ¶ 31 (Oct. 19, 2020). Several affiants claimed that they observed the children's mother, T.T., being violent towards her children. Clark's mother claimed that T.T. threw L.P. in July 2008 and smacked him in the head. April Davis, the mother to Clark's other children, stated that she saw T.T. "slapping her kids" but did not state when the incident occurred. None of these family members' statements relate to L.P.'s injuries documented at trial; the affiants did not claim that they saw T.T. or anyone else physically assault L.P. on or around the dates of the incident.

{¶ 22} With regard to the injuries to A.T., Clark's sister claimed that T.T. slapped A.T. in November 2008. Clark's brother, D.S., who was 12 years old at the time he submitted his affidavit, claimed he saw A.T. fall off a bed sometime in March 2010, which resulted in A.T. having two black eyes and a bloody nose. Scales averred that she noticed a bump and bruise on A.T.'s forehead in March 2010. D.S.'s observation, however, does not explain the burn marks on A.T.'s face, arm, and chest. T.T. testified that Clark told her he put a "hot comb on the stove" and A.T. accidentally burned herself. But A.T. also sustained cigarette burns and

numerous other injuries. The affidavits submitted in support of Clark's postconviction-relief petition do not explain the numerosity or severity of the infant's injuries; therefore, nothing observed by Clark's family members, even if believed, would have changed the outcome of the trial.

{¶ 23} L.P. identified Clark to his teachers as the person who inflicted his injuries. His injuries, as well as those of his sister, were extensive and well documented. Clark had access to the children at the time of the injuries and brought L.P. to and from school on the day L.P.'s injuries were discovered. When confronted with the injuries, Clark provided inconsistent explanations and fled the school with L.P. There is simply no evidence that testimony from Clark's family members would have materially affected the weight of the evidence against him at trial.

{¶ 24} Finally, Clark contends in his petition that his family members would have testified that T.T. is a "liar." T.T.'s credibility, or lack thereof, was already called into question during trial. Clark's trial counsel asked social worker Sarah Bolog ("Bolog") if she had "a hard time believing anything [T.T.] says regarding this" case. Bolog replied, "Yes." (Tr. 527.) During T.T.'s cross-examination, defense counsel questioned T.T. if she admitted to Detective Remington that she was not truthful with social worker Bolog (tr. 565), and T.T. admitted that she lied to her grandmother about being in school. (Tr. 571.) We agree with the trial court's finding that further attacks on T.T.'s credibility would not have changed the outcome of trial.

{¶ 25} Clark claims that his witnesses' motives are only relevant when there is an evidentiary hearing on a postconviction-relief petition. We disagree. A trial court may discount self-serving affidavits presented by a petitioner and the petitioner's family members without an evidentiary hearing. *State v. Moore*, 99 Ohio App.3d 748, 752, 651 N.E.2d 1319 (1st Dist.1994). *See also State v. Jones*, 10th Dist. Franklin No. 06AP-62, 2006-Ohio-5953, ¶ 20 (holding trial court did not err in discounting an affidavit from defendant's sister); *State v. Stedman*, 8th Dist. Cuyahoga No. 83531, 2004-Ohio-3298, ¶ 29 (a trial court may "discount self-serving affidavits" from a petitioner's parents).

{¶ 26} The trial court did not err in deciding that Clark's petition did not warrant an evidentiary hearing and in dismissing his postconviction-relief petition. The first assignment of error is overruled.

{¶ 27} In the second assignment of error, Clark argues that the trial court erred in refusing to allow him to amend his postconviction-relief petition.

{¶ 28} Pursuant to R.C. 2953.21(G)(2), a petitioner may only amend a petition for postconviction relief without leave before the answer is filed. Here, Clark sought leave after the state's responsive pleading was filed. Thus, he had to seek leave of the court. R.C. 2953.21(G)(3). Trial courts have discretion to grant or deny leave to amend a postconviction-relief petition. *State v. Campbell*, 8th Dist. Cuyahoga No. 99936, 2014-Ohio-499, ¶ 19.

{¶ 29} Clark sought to amend his petition to add the following claims that his trial counsel was ineffective for failing to (1) emphasize L.P.'s credibility issues,

(2) properly argue that L.P.'s statements were hearsay, and (3) object to T.T.'s testimony that Clark was her "pimp" and made her travel to Washington D.C. to engage in prostitution.

{¶ 30} Clark sought leave to amend his petition with these new claims more than nine years after its initial filing, claiming, in part, that the delay was caused by the court's stay of his petition. But the fact that disposition of the petition was stayed (with, we note, the parties' consent) is irrelevant to the court's granting Clark leave to amend his petition. In other words, the trial court's decision to stay its ruling on Clark's postconviction-relief petition did not suspend Clark's obligation to amend his petition with reasonable diligence. The claims Clark raises all could have been raised in his original petition or shortly thereafter as they all related to issues he had with defense counsel's effectiveness during trial. Instead, Clark waited more than nine years after he filed his postconviction-relief petition to seek leave to amend the petition. We find no error in the court's denial of his motion for leave to amend his postconviction-relief petition.

{¶ 31} In light of the above, the second assignment of error is overruled.

{¶ 32} In the third assignment of error, Clark contends that the postconviction-statute, R.C. 2953.21, is unconstitutional as applied to him because it allows a trial court to dismiss a postconviction-relief petition without an evidentiary hearing.

{¶ 33} Clark did not raise the constitutionality issue at the trial-court level; therefore, he has waived this issue on appeal. The question of the constitutionality

of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court. *State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986). Statutes are afforded a strong presumption of constitutionality. *Klein v. Leis*, 99 Ohio St.3d 537, 2003-Ohio-4779, 795 N.E.2d 633, ¶ 4. Failure to raise an issue in the trial court constitutes waiver of the issue on appeal. *Awan* at syllabus.

{¶ 34} Clark did not preserve this issue for review, and does not argue plain error here. Appellate courts may, but are not required to, review constitutional challenges to the application of a statute for plain error. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16. We decline to address this issue for the first time on appeal.

{¶ 35} Accordingly, Clark's third assignment of error is overruled.

{¶ 36} The trial court did not abuse its discretion in denying Clark's motion for leave to amend his postconviction-relief petition, filed nine years after his original petition was filed. The trial court also did not abuse its discretion in denying Clark's postconviction-relief petition without an evidentiary hearing.

{¶ 37} The assignments of error being hereby overruled, judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
EILEEN T. GALLAGHER, J., CONCUR