DeGenaro, J., dissenting.
*552 {¶ 32} I agree with the majority that a state-employed social worker's statutory duty to share with law enforcement information concerning a child-abuse investigation does not render the social worker an agent of law enforcement in all cases-I would stop short of creating a bright-line rule. Although the statutory scheme and the way it operates clearly establish a cooperative relationship between children's services agencies and law enforcement, whether a social worker acted as an agent of law enforcement when interviewing an alleged perpetrator must ultimately be determined on a case-by-case basis. The proper analysis requires determining which of two distinct statutory duties the social worker was performing during the interview: the reporting duty under R.C. 2151.421(A)(1)(a) or the investigative duty under R.C. 2151.421(G)(1).
{¶ 33} Here, the effect of R.C. 2151.421, coupled with the evidence-that one of the primary job duties of Cuyahoga County Division of Children and Family Services ("CCDCFS") social worker and child advocate Holly Mack was to interview alleged perpetrators in jail-never child victims; her 17 years of experience; that she interrogated appellee, Demetrius Jackson, in jail after he had been arraigned on the charges she was investigating and after he had already invoked his Miranda rights when questioned by police-leads to the conclusion that when she interviewed Jackson, Mack was functioning as an agent of law enforcement for purposes of the Fifth and Sixth Amendments to the United States Constitution. Accordingly, I dissent from the court's judgment and would affirm the judgment of the court of appeals.
{¶ 34} Mack's interview of Jackson was undertaken pursuant to a statutory scheme that directs children's services agencies, law enforcement, and prosecutors to work collaboratively to investigate and prosecute crimes against children. R.C. 2151.421(G)(1) directs social workers employed by public children's services agencies to do more than merely report instances of child abuse or neglect to law enforcement as required by R.C. 2151.421(A). Rather, they must "investigate * * * to determine the circumstances surrounding the injuries, abuse or neglect, * * * the cause of the injuries, abuse, neglect, or threat, and the person or persons responsible ." (Emphasis added.) R.C. 2151.421(G)(1). That "investigation shall be made in cooperation with the law enforcement agency." (Emphasis added.) Id.
{¶ 35} In furtherance of this duty, a children's services agency is also required to "submit a report of its investigation, in writing, to the law enforcement agency" and to "make any recommendations to the county prosecuting attorney or city director of law that it considers necessary to protect any children that are brought to its attention." R.C. 2151.421(G)(1) and (2). As a corollary, R.C. 5101.13 *553 provides for the establishment of a uniform statewide automated *1249 child-welfare information system ("SACWIS"), which, among other things, "shall contain records regarding * * * [i]nvestigations of children and families * * * in accordance with [R.C.] 2151.421." R.C. 5101.13(A)(1). Mack testified that she uploaded the results of her interview with Jackson into this database.
{¶ 36} Information contained in SACWIS may be accessed by, among others, a prosecuting attorney when the "access * * * is directly connected with assessment, investigation, or services regarding a child or family." R.C. 5101.132(A)(1)(a) ; see also Ohio Adm.Code 5101:2-33-21(F)(2) and (3) (providing that public children's service agencies "shall release" child-welfare information in SACWIS to "[l]aw enforcement officials who are investigating a report of child abuse or neglect" and the "county prosecutor who is investigating a report of child abuse or neglect").
{¶ 37} The statutory scheme formalizes cooperative investigations among children's services agencies, law enforcement, and prosecutors. Therefore, I agree, to a point, with Jackson's argument that it would be disingenuous for us to require that police specifically request that a social worker question an alleged perpetrator before the social worker may be considered an agent of law enforcement for purposes of the Fifth Amendment-indeed, the institutional arrangement provided by law obviates the need for such a request, in many cases. That said, the facts of each case must be examined to determine whether the social worker was acting as an agent of the police.
{¶ 38} I question the majority's reliance on Ohio v. Clark , --- U.S. ----, 135 S.Ct. 2173, 2183, 192 L.Ed.2d 306 (2015), as support for its conclusion that Mack was not acting as an agent of law enforcement when she interviewed Jackson. Ohio v. Clark involved a preschool teacher's statutory duty to report suspected abuse to law enforcement. At issue here is a state-employed social worker's statutory duty to cooperatively investigate suspected abuse with law enforcement. Compare R.C. 2151.421(A)(1)(a) and (b)with R.C. 2151.421(G)(1). See Ohio v. Clark , 135 S.Ct. at 2182-2183.
{¶ 39} As Chief Justice O'Connor explained in her dissent in State v. Clark , 137 Ohio St.3d 346, 2013-Ohio-4731, 999 N.E.2d 592, rev'd and remanded , --- U.S. ----, 135 S.Ct. 2173, 192 L.Ed.2d 306 :
What the [reporting] statute requires is actually quite minimal: when teachers, or others who are required to report, encounter suspected abuse or neglect in their official capacity, they must report it. In turn, the children's services agency or the police-not the mandatory reporters-are responsible for investigating the injury or condition "to determine the circumstances surrounding the injuries, abuse, or neglect or the threat of *554 injury, abuse, or neglect, the cause of the injuries, abuse, neglect, or threat, and the person or persons responsible."
(Emphasis added.) Id. at ¶ 85 (O'Connor, C.J, dissenting), quoting former R.C. 2151.421(F)(1) (now R.C. 2151.421(G)(1) ). Ohio v. Clark is therefore factually distinguishable from this case.
{¶ 40} Moreover, Ohio v. Clark involved a distinct constitutional issue: whether statements made by a minor victim of abuse to his teacher were testimonial and therefore barred under the Sixth Amendment's Confrontation Clause from admission at trial. For these reasons, Ohio v. Clark does not control the outcome of this case.
*1250 {¶ 41} That said, I agree with the majority that R.C. 2151.421(G) and related statutory provisions do not categorically transform a children's services investigator into a law-enforcement agent. However, the specific facts here lead to the conclusion that Mack was acting as the functional equivalent of law enforcement when she had Jackson removed from his housing unit in the jail so she could question him.
{¶ 42} The lead CCDCFS sex-abuse intake social worker, Tina Funfgeld, explained in her testimony that Mack was "assigned to the county jail," and indeed, Mack testified that one of her primary job duties was to interview alleged perpetrators in jail and that she interviewed no one else. Mack had 17 years of experience with CCDCFS. Jackson, on the other hand, though he had a prior criminal record, did not display a high level of insight regarding the criminal investigative process. For example, according to his testimony, after the rape allegations were levied against him, he waited for the police to arrive, believing that a rape kit would be performed on site and would immediately exonerate him.
{¶ 43} Moreover, Jackson's statement to Mack occurred after he had declined to speak to police. He did not talk to any of the officers at the hospital where he was taken upon his arrest. And when a Cleveland Police detective visited him at the jail and advised him of his Miranda rights, Jackson refused to speak, explaining at trial that he "just wasn't saying nothing after that."
{¶ 44} Thereafter, Mack came to the county jail to question Jackson. Importantly, for purposes of this appeal, the only issue is whether Mack acted as an agent of law enforcement. The state concedes that Jackson was in custody during Mack's interview and that Mack did not Mirandize Jackson; further, the state does not dispute that Mack's interview constitutes an interrogation.
{¶ 45} Mack testified regarding her protocol when interviewing an alleged perpetrator: "I identify myself, I let them know that they have been named as the alleged perpetrator, I let them know what the allegations are against them, and then I also let them know that anything they tell me can be subpoenaed by the *555 Courts. It is then up to them whether or not they want to continue with the interview or not." Mack further testified that when informed of the allegations against him, Jackson proceeded to tell her "his side of the story."
{¶ 46} The manner in which Mack conducted her interview implicates one of the primary concerns of Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.E.2d 694 (1966) : the use of deceptive tactics to obtain incriminating statements. See State v. Roberts , 32 Ohio St.3d 225, 230-231, 513 N.E.2d 720 (1987). She never testified whether-or if so-how she followed her protocol with Jackson or whether she explained the ramifications for him . Specifically, there is no indication that Jackson understood that his statements to Mack could be used against him at trial or-what ultimately happened here-that the admission of her testimony would put him in the position of taking the stand at trial when he otherwise would not have. Based on these facts, it is highly questionable whether Jackson would have spoken to Mack had she first advised him of his Miranda rights.
{¶ 47} Contrary to the majority's conclusion, Mathis v. United States , 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), and Estelle v. Smith , 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), are instructive. Mathis involved an Internal Revenue Service ("IRS") agent who questioned an inmate in prison where the inmate was *1251 serving a state sentence. The inmate was ultimately charged with and convicted of violations of the federal false-claims statute. On appeal, the Supreme Court concluded that statements and information gathered by the agent should not have been admitted at the defendant's trial because the agent had failed to provide him Miranda warnings. Implicit in the court's decision was a determination that the IRS agent was the functional equivalent of law enforcement.
{¶ 48} Estelle is even more on point. In that case, the Supreme Court held that Miranda applied to a psychiatric examination conducted by a court-appointed psychiatrist, concluding that the fact that the defendant "was questioned by a psychiatrist designated by the trial court to conduct a neutral competency examination, rather than by a police officer, government informant, or prosecuting attorney, is immaterial." Id. at 467, 101 S.Ct. 1866. The Supreme Court observed that under these circumstances, the psychiatrist "went beyond simply reporting to the court on the issue of competence and testified for the prosecution." Id. At that point, "his role changed and became essentially like that of an agent of the State recounting unwarned statements made in a postarrest custodial setting." Id.
{¶ 49} Similarly, Mack's interrogation of Jackson exceeded the customary function of a child advocate: to protect the safety and welfare of children. Rather, she was acting as an extension of law enforcement. Mack went beyond investigating and reporting-whether, for example, the victim was at risk of exposure to a *556 sexually transmitted disease. Instead, she elicited and ultimately recounted Jackson's "side of the story," which put Jackson in the position of taking the stand in order to counter Mack's testimony.
{¶ 50} Further, the decision of the United States Court of Appeals for the Second Circuit in Jackson v. Conway -affirming the grant of federal habeas corpus relief in a case with facts strikingly similar to those here-is persuasive. 763 F.3d 115 (2d Cir.2014). In that case, the defendant was arrested before dawn after he was accused of committing multiple rapes during the night. Later in the morning, after police had read him his Miranda rights, he invoked his right to remain silent and refused to speak to them. He remained in a holding cell until the afternoon. At some point during the day, after interviewing the victims, a child-protective-services ("CPS") caseworker from the county department of social services interviewed the defendant in the hallway outside his holding cell after the defendant was escorted there by an officer. The caseworker "introduced herself as a CPS caseworker, explained her role, and asked [the defendant] if she could speak with him about the victims' allegations. She did not, however, inform him of his right to an attorney or give him any other warnings." Id. at 122. The defendant agreed to speak with her and, in essence, told her his side of the story. At trial, the caseworker testified about what the defendant had related to her. Applying Mathis , the Second Circuit held that the admission of the caseworker's testimony about the interview violated the defendant's Fifth Amendment right against compelled self-incrimination. Jackson v. Conway at 135-140.
{¶ 51} As the majority opinion in the court of appeals here emphasized: it "is absolutely undisputed" that if law-enforcement officers conducted interviews in the manner in which Mack did, the practice would violate the Fifth Amendment. 2016-Ohio-8144, 75 N.E.3d 922, ¶ 20. Given the facts of this case, Mack was the functional equivalent of a law-enforcement agent and absent Miranda warnings, her interrogation of Jackson violated his right against self-incrimination. "Any other conclusion *1252 would allow the State to ignore a defendant's constitutional rights merely by having the interrogation conducted by someone who lacks the title 'law enforcement officer' but who is otherwise performing the interrogation of such an officer." State v. Deases , 518 N.W.2d 784, 790 (Iowa 1994) (concluding that "when a state official conducts a custodial interrogation that would require a Miranda warning if undertaken by a police officer, then the official is similarly required to give a Miranda warning").
{¶ 52} Based on all of the above, the admission of Mack's testimony violated Jackson's Fifth Amendment right to be free from compelled self-incrimination.
{¶ 53} I would also affirm the court of appeals' conclusion that the admission of Mack's testimony violated Jackson's Sixth Amendment right to counsel. "The Sixth Amendment protects the right of the accused not to be confronted by an *557 agent of the State regarding matters as to which the right to counsel has attached without counsel being present." (Emphasis added.) Maine v. Moulton , 474 U.S. 159, 177, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), fn. 14. "[O]nce the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings. Interrogation by the State is such a stage." (Citations omitted.) Montejo v. Louisiana , 556 U.S. 778, 786, 129 S.Ct. 2079, 173 L.Ed.2d 955 (2009).
{¶ 54} The state does not dispute that Jackson was subjected to a custodial interrogation. Mack's interview with Jackson took place after he had been arraigned and after he had invoked his Miranda rights when a detective attempted to interrogate him at the jail. Significantly (in light of Jackson's prior invocation of Miranda ), the record fails to demonstrate that Mack read Jackson his Miranda right or asked him whether he wanted an attorney present. Based on all the above, the admission of Mack's testimony violated Jackson's Sixth Amendment right to counsel.
{¶ 55} In sum, based on the totality of the circumstances in this case, I would conclude that Mack was functioning as an agent of law enforcement for purposes of the Fifth and Sixth Amendments to the United States Constitution when she questioned Jackson. Therefore, I would affirm the judgment of the court of appeals.
{¶ 56} Respectfully, I dissent.